| | |
|---|---|
| | HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| QUINAULT INDIAN NATION<br><br>Plaintiff,<br><br>v.<br><br>HON. DIRK KEMPTHORNE, in his official capacity as Secretary, United States Interior; HON CARL ALTMAN, in his official capacity as Assistant Secretary, Indian Affairs, United States Department of Interior, and STANLEY M. SPEAKS, in his official capacity as Regional Director of Indian Affairs, United States Department of Interior<br>Defendant. | Case No. C09-5064 RBL<br><br>ORDER GRANTING TEMPORARY RESTRAINING ORDER |

THIS MATTER is before the Court on Plaintiff's motion for Temporary Restraining Order [Dkt. #9] and Plaintiff's motion for Emergency Temporary Restraining Order [Dkt. #13]. For the reasons set forth below, the motions are GRANTED.

**I. Introduction**

This action centers around the attempted sale of 26 parcels of Indian-owned trust land within the Quinault Indian Reservation. This action is intricately related to a companion case, *Anderson & Middleton*

ORDER
Page - 1

*v. Salazar et al.,* Cause No. CV09-5033RBL[1]. Plaintiff bid for the land, submitted a deposit, and subsequently failed to pay the remaining balance due. Plaintiff argues that it is justified in not yet tendering full payment for the 26 parcels and asks the Court to enjoin both the forfeiture of its deposit and the pending sale of the parcels to the next highest bidder[2]. Defendants argue that a temporary restraining order is improper and that the United States Department of the Interior of Board of Indian Appeals' (IBIA) decision should continue to bind the Quinault Nation (Quinault) in this matter.

In July of 2006, tribal member Ms. Helen Sanders applied to the Board of Indian Affairs (BIA) to sell her trust land as is required by 25 U.S.C. §483 [Dkt. #14]. The BIA organized a public auction for the land in June, 2007, by giving notice in the local newspaper [Dkt. #15]. This public notice invited bidders to bid on the 26 parcels in question. It did not mention Quinault or its statutory right to match the highest bid[3]. *Id*. Bidding for the land occurred in July, 2007. On July 7, 2007, Quinault bid $4.8 million for all 26 parcels [Dkt. #9-2]. The bids were publicly announced on July 14, 2007. *Id*. Along with Quinault, the other relevant bidder was Anderson & Middleton Company (A&M) whose bid only pertained to 20 parcels. *Id*. The total amount of A&M's bid was $4,391,026.00. A&M bid for four parcels separately. However, its bid for the remaining 16 parcels was in lump-sum form. The BIA therefore requested that A&M break down its bid for the remaining 16 parcels to determine who was the high bidder for each parcel. [Dkt. #4-3] (Board Decision, 4). At this point, both A&M and Quinault tendered 10% deposits, as required by the BIA[4]. In a letter dated July 23, 2007, the BIA determined that (1) Quinault was the highest

---

[1]The Anderson & Middleton case is currently stayed. Defendants have moved to Consolidate [*see* Dkt. #8 in this action; Dkt. #10 in CV 09-5033] the cases, and there has been no opposition from the Plaintiff in either case. The Motion to Consolidate has therefore been granted.

[2]Plaintiff claims that the BIA's bidding process was flawed and arbitrary, and that Quinault should have been able to purchase the land at market value without participating in the bidding process, and that the advertisement for the sale of the 26 parcels was materially misleading [Dkt. #1, 5].

[3]As amended in 2004, 25 U.S.C. § 2216(f) provides the Quinault with the right to match any offer removing the trust status or other restrictions on alienation from Indian-owned land.

[4]The Quinault's deposit was $480,000.00 and A&M's depostit was $439,102.60 [Dkt. #13-5].

bidder for the six parcels not bid upon by A&M, and (2) A&M was the highest bidder on the 20 parcels for which they had submitted a bid[5] [Dkt. #4-3] (Board Decision, 7). The BIA then went back to Quinault, as required by 25 U.S.C. § 2216(f), and offered it the opportunity to match A&M's bid for the remaining 20 parcels. *Id*. Quinault reluctantly matched A&M's bid, while protesting the bidding process and the method used for evaluating the highest bid. *See Quinault's Letter of Protest, Exhibit M*. After matching A&M's bid, the total amount owed by Quinault for the 26 parcels was $5,476,415.00[6]. *Id*.

Both A&M and Quinault appealed to the IBIA[7] [Dkt. #4-3]. Quinault argued that the process for evaluating the bids was flawed and that the final price that the BIA required from Quinault to purchase the 26 parcels was too high. *Id*. Quinault also argued, as it does here, that it should have had the opportunity to purchase the parcels for "fair market value" without entering into the formal bidding process. *Id*. A&M argued that Quinault was improperly given the opportunity to match its bid and that it should be allowed to purchase the 20 parcels for its initial bid price. *Id*. On December 30, 2008 the IBIA issued a decision on the consolidated appeals, rejecting the arguments made by Quinault and A&M, and affirming the BIA's decision to award the sale of the parcels to Quinault for $5,476,415.00 [Dkt. #4-3].

After the appeal concluded, the IBIA sent Quinault a letter confirming the agreement and reminding it of its obligation to pay the remaining $4,996,415.00 by February 17, 2009[8] [Quinault Action, Dkt. #9-3]. The letter gave Quinault 30 days to tender full payment for all 26 parcels. The letter also stated that if the full amount was not received within the given time period, then Quinault's 10% deposit would be forfeited.

---

[5] By comparing the amounts bid by both A&M and Quinault, the BIA determined that Quinault's bid for the 16 parcels (for which A&M submitted only a lump-sum bid) could not exceed A&M's lump-sum bid for these same parcels regardless of how the bids were itemized out after the fact.

[6] This amount represents the match price for A&M's bid amount for the 20 parcels, $4,391,026.00, plus the $1,085,389.00 bid by the Quinault for the remaining six parcels [Dkt. #9-3,9-4].

[7] The Quinault appeal and the A&M appeal were consolidated before the IBIA.

[8] This is the difference between the final bid price of $5,476,415.00 and the deposit already paid by the Quinault of $480,000.00.

*Id*. On January 21, 2009, A&M filed suit in this Court challenging the December 30, 2008 IBIA decision[9]. Similarly, on February 4, 2009, Quinault filed suit in this Court also challenging the IBIA decision [Dkt. #1]. The deadline for full payment by Quinault passed at the end-of-business on February 17, 2009, after both suits were filed. Quinault filed a motion for a temporary restraining order on February 18, 2009 [Dkt. #9]. Quinault has not tendered any additional sums to the BIA in furtherance of purchasing either the 20 contested parcels or the six parcels for which it was the only bidder. Without an injunction, Quinault now faces the possibility of losing both its deposit and its right to purchase all 26 parcels. Similarly, A&M seeks an injunction to prevent the parcels from being transferred to Quinault in the event that Quinault, is able to tender the remaining $4,996,415.00.

**II. Discussion**

A plaintiff seeking preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Coucil, Inc*., __U.S.__, 129 S.Ct. 365, 374 (Slip Opinion) (Nov. 12, 2008). (Citations Omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id*. at 376. The standard for granting a preliminary injunction balances a plaintiff's likelihood of success on the merits against the hardship to the parties. The greater the relative hardship to the moving party, the less probability of success on the merits must be shown. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Arcamuzi v. Continental*

---

[9] A&M previously filed Cause No. C07-05419, attempting to prevent the sale of the 20 parcels of land to Quinault. That action was dismissed, because A&M had failed to exhaust its administrative remedies before commencing an action in this Court, pursuant to 5 U.S.C. § 704. Having now exhausted its administrative remedies, A&M filed another action under Cause No. C09-05033, requesting that the Court enjoin the Defendants from granting the Quinault the right to match A&M's high bid for the 20 contested parcels, and requesting that the Court enjoin transfer of the parcels to Quinault. *Anderson & Middleton Co. v. Salazar et al.,* 3:09-cv-05033RBL [Dkt. #s1, 5].

ORDER
Page - 4

*Airlines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (Citations Omitted). However, all four factors are considered together in evaluating if a preliminary injunction is appropriate. The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs. Inc.*, 181 F.Supp.2d 1111, 1126 (E.D.Cal. 2001).

There is a tenable argument that Plaintiff will succeed at overturning at least one of the IBIA's conclusions if given the chance to argue the merits. Plaintiff unsuccessfully argued to the IBIA that because an advertisement was placed in the local newspaper without notice of Quinault's statutory right to match the highest bid, the price of the 26 parcels was improperly driven up by public bid[10] [Dkt. #4-3]. Put another way, Plaintiff argues that but for the improper advertisement, the price required to purchase the 26 parcels would have been significantly lower. *Id*.

Standing on its own, Plaintiff's material misinformation argument does not itself satisfy the standard required for issuing a temporary restraining order. However, A&M also claimed that it had no knowledge of Quinault's right to match when submitting its bid. *Id*. Indeed, A&M claimed in its appeal to the IBIA that it would not have submitted a bid at all, if it had known of Quinault's right to match. *Id*. Because Quinault was required to increase its bid from $4,800,000.00 to $5,476,415.00 to match A&M's bid, and because A&M would not have submitted a bid but for the omission in the advertisement, there is at least some chance of success on the merits of Quinault's faulty process challenge to the BIA decision. While Plaintiff's likelihood of success on the merits may not be a compelling factor by itself, the three other required factors compel the Court to grant the temporary restraining order.

Plaintiff has adequately demonstrated that if a temporary restraining order is not issued, then it will suffer significant and immediate irreparable harm. The deadline for Quinault to avoid forfeiture of its

---

[10]Plaintiff also argues that the BIA's erroneous statement that the land was zoned for recreation and home site purposes contributed to the land's improperly inflated price [Dkt. 4-3].

ORDER
Page - 5

deposit on the parcels passed on February 17, 2009[11]. Plainly stated, if the Court does not intervene, then Quinault's entire $480,000.00 deposit will be forfeited [Dkt. #4-4].

The balance of equities tips in favor of Quinault as well. In making this determination the Court considers each party's claimed injury, as well as the effect that granting or denying Plaintiff's motion would have on the parties. *Winter,* 129 S.Ct. at 376. On one hand, denying the temporary restraining order would cost Quinault its $480,000.00 deposit. Denial would also only minimally harm Defendants' as they already have another buyer for the land, in A&M, as well as Quinault's $480,000.00 deposit. On the other hand, granting the temporary restraining order would maintain the status quo and, at least while the matter is pending, save Quinault's $480,000.00 deposit. Granting the temporary restraining order would detriment Defendants in a very limited sense; namely, they would be prevented from using Quinault's deposit until the Court reaches a decision on the merits.

Finally, an injunction is in the best interests of the public. While the public has an interest in the continued availability of timber and timber derivative resources (the purpose for which A&M, a timber company, seeks the land in question), there are stronger public interests compelling the temporary restraining order. The public has an interest in maintaining the availability of its natural forests and protecting old growth trees from being exploited. However, and perhaps more importantly, the Quinault have a distinct interest in preventing the limited land assigned to their nation from falling into hands of non-Quinault owners[12]. This interest is reflected in Congress' recent enactment of stricter legislation to protect tribes like the Quinault. *See, e.g.,* 25 U.S.C. § 2216(f) (2004) (broadening the types of conveyances

---

[11]In a January 23, 2009 letter to Quinault, the BIA stated that forfeiture of $108,538.90 (10% deposit required for the six uncontested parcels) would occur regardless of the pending action before the Court [Dkt. #4-5]. The Court sees no reason to distinguish between the 20 contested parcels and the six uncontested parcels for purpose of deposit forfeiture. Quinault submitted a lump sum bid for all 26 parcels along with a deposit to cover all 26 parcels. Quinault alleges error in the BIA's judgment as it relates to all 26 parcels and as such the six uncontested parcels are indistinguishable for purposes of deposit forfeiture.

[12]Quinault provides a brief but useful summary of the problems in maintaining land for Native American tribes in their Motion for Temporary Restraining Order [Dkt. #9-2].

subject to the statutory tribal right to match competing bids during sales of Indian-owned land). The public's interest in preserving Native American land is hardly debatable and provides additional grounds for allowing a temporary restraining order in this matter. Moreover, the public's interest is not served by a forfeiture of Quinault's deposit, because Defendants currently have another buyer lined up, and there is no risk that they will be left unpaid. Allowing forfeiture of the deposit while awaiting the resolution of a good faith dispute does not serve the public's interest. For these reasons, the Court will grant Quinault's motion for a temporary restraining order, staying the forfeiture of Quinault's deposit and staying any sale of the 20 contested parcels to A&M.

Rule 65 allows the Court to require a bond upon issuing a temporary restraining order. Fed. R. Civ. P. 65. This bond may be used as a security to cover attorneys fees, costs and damages sustained by a party subject to the wrongful issuance of a temporary restraining order. Because the BIA has demonstrated that it may suffer some financial loss due to the Court's decision in granting Quinault's motion for a temporary restraining order. Plaintiff is hereby required to post a total bond of $100,000.00 .

### III. Conclusion

The facts of this case are sufficient to support a temporary restraining order. Because there is a substantial likelihood of irreparable harm, because the balance of equities tips heavily in Quinault's favor, and because granting the motion is in the public's interest, a temporary restraining order is proper.

IT IS SO ORDERED.

Dated this 18th day of March, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE